UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ALBRO,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD V. SPENCER, Secretary of the United States Department of the Navy,<br><br>Defendant. | No. 1:18-cv-01156-DAD-JLT<br><br><u>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND</u><br><br>(Doc. No. 20) |

This matter came before the court on May 21, 2019 for a hearing on defendant Richard V. Spencer's motion to dismiss. (Doc. No. 20.) Attorney John Harrington appeared on behalf of plaintiff William Albro. Assistant United States Attorney Joseph Frueh appeared on behalf of defendant. The court has considered the parties' briefs and oral arguments, and for the reasons set forth below, will grant in part and deny in part defendant's motion to dismiss with leave to amend.

**BACKGROUND**

Plaintiff is an employee of the Naval Air Warfare Center Weapons Division ("NAWCWD") in China Lake, California. He brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, claiming that he experienced disparate treatment and a hostile work environment at the NAWCWD based on his non-affiliation with the Church of

1

Jesus Christ of Latter-day Saints ("LDS Church"), and that he also experienced retaliation when he complained of such discrimination.

In his complaint plaintiff alleges as follows. Plaintiff holds a bachelor's degree in Chemistry, as well as a master's degree and Ph.D. in Physical Chemistry. (Doc. No. 1 at ¶ 8.) In 2006, plaintiff was hired by the Department of the Navy to work at NAWCWD, where he advanced to the position of Firing Officer. (*Id.* at ¶¶ 9, 10.) As part of his duties, plaintiff was authorized to carry out tests involving the use of explosives, was responsible for compliance with safety audits and the issuance of correction actions for violations of safety protocols, and, prior to February 2016, had custody of and responsibility for approximately $10 million worth of laboratory equipment. (*Id.* at ¶ 10.)

Shortly after plaintiff began working at NAWCWD, co-worker Ephraim Washburn, who served as the High Priest of the local LDS Church, began pressuring plaintiff and plaintiff's wife to join the local LDS Church. (*Id.* at ¶ 12.) Plaintiff's wife joined the LDS Church, but disassociated from the LDS Church in 2010. (*Id.* at ¶¶ 13, 14.) Since that time, members of the LDS Church have continuously contacted plaintiff's wife in attempts to bring her back to the LDS Church, including via letters and missionaries showing up at the Albros' home. (*Id.* at ¶ 14.) In or around August 2012, plaintiff's supervisor, Fred Bloomshield, retired from his position as Branch Head and Washburn was selected to replace him. (*Id.* at ¶ 16.)

Almost immediately after Washburn became plaintiff's new direct supervisor, Washburn began hostile treatment of plaintiff because plaintiff is not a member of the LDS Church. (*Id.* at ¶ 17.) For example, in January 2013, plaintiff returned from the holidays to discover that his cubicle had been reassigned to another employee and that he was missing various personal items. (*Id.*) When plaintiff complained to Washburn, Washburn replied, "Tough. Deal with it." (*Id.*) In or around June 2014, plaintiff applied and interviewed for a Division Head position. (*Id.* at ¶ 18.) Despite being the most qualified candidate, plaintiff was not hired because management purportedly deemed him "too valuable to lose." (*Id.*) In or around July 2014, Washburn knowingly allowed plaintiff to continue using a fume hood that had failed a safety inspection. (*Id.* at ¶ 19.) In or around January 2015, plaintiff had a performance review meeting with

Washburn, where Washburn told plaintiff that "it will be political from here on out." (*Id.* at ¶ 21.)

Following the performance review meeting, plaintiff found himself defending against allegations of wrongdoing roughly every other week. (*Id.*) For example, in January 2015, someone attempted to access plaintiff's explosives safe multiple times, which caused a lock-out. (*Id.* at ¶ 22.) Plaintiff reported the incident to the China Lake security team, and someone other than plaintiff called 911. (*Id.*) Management, including Washburn, falsely accused plaintiff of mismanaging the situation and creating unnecessary panic by alerting 911, even though it was not plaintiff who did so. (*Id.*) Then, in or around February 2015, management ordered mediation between plaintiff and Washburn. (*Id.* at ¶ 23.) The conclusion of the mediation was that there was a "lack of trust" between plaintiff and Washburn. (*Id.*)

In or around March 2015, plaintiff saw the words "TO BE FIRED" next to his name on a board at the office, which was visible to a number of people. (*Id.*) The same month, plaintiff met with Human Resources Specialist Christine Farris and Division Head of the Energetics Division Jeff Davis, who is plaintiff's second level supervisor, and complained about the unsupportive work environment. (*Id.* at ¶ 24.) Later that month, plaintiff learned that coworker Will Mangrum had falsely charged 141 hours of work to plaintiff's funding account, which plaintiff alleges was a deliberate attempt to drain plaintiff's account of funds. (*Id.* at ¶ 25.)

In or around April 2015, Claresta Dennis, a physicist who worked in an office that plaintiff had vacated two years earlier, reported that she had discovered a gun in a box on a top shelf. (*Id.* at ¶ 26.) Though the gun was a tranquilizer gun of unknown origin, Washburn falsely accused plaintiff of having an unauthorized gun. (*Id.* at ¶¶ 26, 57.) Washburn and Dennis told plaintiff that the Naval Criminal Investigative Service ("NCIS") would interview him about the incident. (*Id.* at ¶ 26.)

In or around May 2015, Washburn, in violation of procedure, directed Will Mangrum to approach the China Lake security team about gaining access to the combinations on plaintiff's explosive safes. (*Id.* at ¶ 27.) Later that month, plaintiff learned that he had not received emails about an upcoming Explosives Safety Inspection, which fell directly within the scope of his duties, because his name had been removed from an email list. (*Id.*)

On or about June 10, 2015, plaintiff participated in a second meeting with Human Resources Specialist Christine Farris and Division Head of the Energetics Division Jeff Davis. (*Id.* at ¶ 28.) At the meeting, Davis informed plaintiff that he had conducted an investigation and concluded that plaintiff was "the problem." (*Id.*) The next day, plaintiff learned that Davis had falsely informed Greg Wheelock, Deputy Associate Director for Energetics and plaintiff's third level supervisor, that plaintiff had been offered disciplinary measures at the June 10, 2015 meeting. (*Id.* at ¶¶ 20, 29.)

On or about June 16, 2015, plaintiff learned that management planned to move him under the supervision of Martin Minthorn, which would require plaintiff to leave his laboratory and equipment behind and under the control of Washburn. (*Id.* at ¶ 30.) On or about June 30, 2015, Washburn and Davis ordered plaintiff to cut off the locks of the secure area in his laboratory. (*Id.*) When plaintiff expressed concerns about doing so, Washburn and Davis threatened to escort plaintiff to base counseling. (*Id.*)

On or about July 7, 2015, plaintiff learned that someone had recommended removal of his security clearance, which would have resulted in the loss of his job. (*Id.* at ¶ 31.) Around the same time, management required plaintiff to undergo a psychological examination. (*Id.*) The base psychologist concluded that plaintiff did not have any psychological issues. (*Id.*) On or about July 22, 2015, plaintiff received notification from the China Lake security team that the investigation into his security clearance had been adjudicated in his favor with a recommendation to not remove or suspend his clearance. (*Id.* at ¶ 32.)

Shortly thereafter, on July 27, 2015, management and Human Resources ordered an investigation of plaintiff to be conducted by Robert Long, the Head of the Avionics and Weapons Integration Engineering Division. (*Id.*) During the course of this investigation, Long interviewed plaintiff on more than one occasion, was argumentative during the interviews, and refused to accept any documents that plaintiff attempted to offer in defense. (*Id.* at ¶ 33.)

On or about October 8, 2015, Long issued a report of his investigation, which found multiple instances of purported wrongdoing by plaintiff. (*Id.* at ¶ 35.) Plaintiff claims that the allegations upon which the report relied were not true or grossly distorted the underlying facts.

(*Id.*)  Although plaintiff denied the allegations, he was unable to respond fully to the report because large portions of that report were redacted.  (*Id.*)

On or about December 9, 2015, plaintiff received a Notice of Proposed Suspension, which proposed suspending plaintiff for seven days based on allegations mirroring those in Long's report.  (*Id.* at ¶ 36.)  In order to respond to the Notice of Proposed Suspension, plaintiff requested an unredacted copy of the Long report and the identities of the witnesses upon whom the report relied, but management denied plaintiff's request.  (*Id.* at ¶ 37.)  On January 11, 2016, plaintiff submitted a 234-page response to the Notice of Proposed Suspension denying the allegations made against him.  (*Id.* at ¶ 38.)

On or about January 19, 2016, plaintiff contacted the Equal Employment Opportunity ("EEO") office with an informal complaint.  (*Id.* at ¶ 40; Doc. No. 20-7 at 3.)  On February 16, 2016, Charles Bechtel, the Technical Director of Weapons and Energetics, upheld the Notice of Suspension.  (*Id.* at ¶ 38.)  On or about February 16, 2016, plaintiff amended his EEO informal complaint to include a challenge to the upholding of his suspension.  (*Id.* at 40.)  Plaintiff later filed a formal EEO complaint on or about April 18, 2016.  (*Id.*)

Because plaintiff was reassigned to work under Martin Minthorn on February 23, 2016, plaintiff was required to turn over custody of his laboratory and laboratory equipment to Washburn.  (*Id.* at ¶ 39.)  Since that time, plaintiff has been unable to secure facilities to continue performing the work on his projects, and has lost funding for those projects as a result.  (*Id.* at ¶¶ 41, 42.)

Plaintiff initiated this civil action on August 24, 2018.  (Doc. No. 1.)  He brings three claims under Title VII against the Secretary of the United States Department of the Navy for:  (1) discrimination based on his non-affiliation with the LDS Church; (2) hostile work environment based on his non-affiliation with the LDS Church; and (3) retaliation for engaging in EEO activity.  (*Id.* at ¶¶ 43–108.)

On March 29, 2019, defendant filed the motion to dismiss now pending before the court.  (Doc. No. 20.)  Plaintiff filed his opposition on May 7, 2019, and defendant filed its reply on May 13, 2019.  (Doc. Nos. 22, 23.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). A dismissal may be warranted where there is "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In evaluating whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court will not assume the truth of legal conclusions cast in the form of factual allegations. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 676. A complaint must do more than allege mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

In ruling on such a motion, the court is permitted to consider material which is properly submitted as part of the complaint, documents that are not physically attached to the complaint, if their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

## ANALYSIS

Defendant moves to dismiss plaintiff's complaint in its entirety, arguing that plaintiff's causes of actions for disparate treatment on the basis of non-religious affiliation, hostile work

/////

environment, and retaliation fail as a matter of law. (Doc. No. 20-1.) The court considers each of these arguments in turn below.

**A.     Disparate Treatment**

Title VII makes it unlawful for an employer to discriminate against an employee because of his or her race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). In this context, religion includes "all aspects of religious observance and practice, as well as belief," including an employee's non-religious affiliation. *Id.* § 2000e(j); *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168–69 (9th Cir. 2007) (recognizing that Title VII discrimination claim may be based on an employee's lack of adherence to the religious beliefs promoted by the employer).

          1.     Timeliness and Administrative Exhaustion

With respect to plaintiff's first cause of action for disparate treatment, defendant argues that the court lacks subject-matter jurisdiction over the various workplace grievances that plaintiff failed to present in his EEO complaint. (Doc. No. 20-1 at 13.) Even if the court had jurisdiction to consider those incidents, defendant contends those claims are time-barred because plaintiff failed to contact an EEO counselor within 45 days of their occurrence. (*Id.*) Defendant thus argues that plaintiff's disparate treatment claim may only proceed on those incidents of alleged discrimination both (1) identified in his EEO complaint and (2) occurring within 45 days of January 19, 2016, the date plaintiff contacted the EEO Office.[1] (*Id.*)

To bring a Title VII claim in district court, a plaintiff must first exhaust his or her administrative remedies. 42 U.S.C. § 2000(e)-16(c); *Sommatino v. United States*, 255 F.3d 704, 707 (9th Cir. 2001). Under the statutory and regulatory scheme, a federal employee must notify

---

[1] In connection with its motion to dismiss, defendant submitted a copy of plaintiff's formal EEO complaint dated April 18, 2016. (Doc. No. 20-7.) Plaintiff does not object to the court taking judicial notice of his EEO complaint and considering it for the limited purpose of addressing the merits of defendant's Rule 12(b)(1) jurisdictional argument. (Doc. No. 22 at 16.) Moreover, "[i]n the context of employment discrimination cases in particular, it is well established that courts may consider the administrative record of a plaintiff's claims before the EEOC as judicially noticeable matters of public record." *Lacayo v. Donahoe*, No. 14-cv-04077-JSC, 2015 WL 993448, at *9 (N.D. Cal. Mar. 4, 2015); *see also Hsu v. Donohoe*, No. 5:13-cv-02253-PSG, 2014 WL 11539112, at *2 (N.D. Cal. Mar. 20, 2014) (taking judicial notice of "documents stemming from [plaintiff]'s employment, litigation, and EEO history"). The court therefore finds it appropriate to take judicial notice of plaintiff's EEO complaint.

an EEO counselor of discriminatory conduct within 45 days of the alleged conduct. *Sommatino*, 255 F.3d at 708 (citing 29 C.F.R. §§ 1614.105, 1614.106). The Supreme Court recently clarified that Title VII's claim-processing rules, while mandatory, are non-jurisdictional. *Fort Bend Cty., Tex. v. Davis*, No. 18-525, --- S. Ct. ---, 139 S. Ct. 1843, 1851 (2019). In other words, unlike challenges to subject-matter jurisdiction, which may be raised by a defendant at any point in the litigation and cannot be waived, a non-jurisdictional claim-processing rule may be forfeited if the party asserting it "waits too long to raise the point." *Id.* at 1849 (citation omitted).

Although defendant is incorrect to characterize Title VII's claim-processing rules as implicating this court's subject-matter jurisdiction, defendant is nonetheless correct that plaintiff's disparate treatment claim cannot be predicated on unexhausted or untimely incidents. *See Fort Bend Cty.*, 139 S. Ct. at 1851 ("Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts."). Indeed, in his opposition, plaintiff appears to concede that a disparate treatment claim based on incidents not included in his EEO complaint or not occurring within 45 days of his initial EEO contact on January 19, 2016 would be barred. (*See* Doc. No. 22 at 24–26.) Plaintiff instead argues that any unexhausted or untimely incidents alleged in the complaint serve only as "background evidence" in support of his claim that his suspension was discriminatory. (Doc. No. 22 at 24–26); *see also Flores v. City of Westminster*, 873 F.3d 739, 754 (9th Cir. 2017) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (noting that evidence of defendants' acts outside the statute of limitations was relevant to plaintiffs' discrimination claims); *Sanders v. Foxx*, 644 Fed. App'x 781, 782 (9th Cir. 2016) (holding that plaintiff "can rely on acts occurring more than 45 days before he contacted the EEO Counselor as 'background evidence in support of [his] timely claim'") (quoting *Morgan*, 536 U.S. at 113)).[2]

The court has taken judicial notice of plaintiff's EEO complaint, in which the earliest, timely incident of discrimination alleged is plaintiff's receipt of the Notice of Proposed Suspension on December 9, 2015. (*See* Doc. No. 20-7 at 4.) Plaintiff avers that he is not

---

[2] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

asserting any separate claim(s) based on defendant's alleged actions prior to December 9, 2015. (Doc. No. 22 at 24–25.) Thus, insofar as plaintiff's disparate treatment claim is predicated on unexhausted incidents not alleged in his EEO complaint, or untimely incidents occurring more than 45 days prior to plaintiff's EEO contact on January 19, 2016, defendant's motion to dismiss will be granted.

### 2. Failure to Allege Sufficient Facts

Defendant next contends that, even considering the timely and exhausted incidents that are properly before the court, plaintiff's disparate treatment claim must fail because there are no specific facts alleged giving rise to a plausible inference that any of the alleged incidents was based on plaintiff's non-affiliation with the LDS Church. (Doc. No. 20-1 at 14–16.)

To prove disparate treatment under Title VII, a plaintiff has the burden of alleging and demonstrating a discriminatory motive on the part of the defendant. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977); *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004). In demonstrating discriminatory intent based upon circumstantial evidence, a plaintiff may rely on the *McDonnell Douglas* test. *See Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 691 (9th Cir. 2017) (noting that "nothing compels the parties to use the *McDonnell Douglas* framework," and that plaintiff may simply produce "evidence demonstrating that a discriminatory reason 'more likely than not motivated' the employer") (citing *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007)). Under the *McDonnell Douglas* framework, a plaintiff can establish a prima facie case of Title VII discrimination by pleading that "(1) the plaintiff belongs to a protected class, (2) he was performing according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Reynaga*, 847 F.3d at 691; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008).

Once plaintiff establishes a prima facie case of discrimination, the burden shifts to defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment

action. *See McDonnell Douglas*, 411 U.S. at 802–03; *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). If defendants meet their burden in this regard, the burden shifts back to plaintiff to establish that defendants' proffered reason was a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993); *Diaz*, 521 F.3d at 1207.

Plaintiff argues that a complaint need not contain specific factual allegations establishing a prima facie case of discrimination and that, in accordance with the Supreme Court decision in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002), an employment discrimination complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." (Doc. No. 22 at 17–18.) Plaintiff further argues that even though he is not required to plead facts establishing a prima facie case at this stage of the litigation, he has nonetheless met his prima facie burden. (*Id.* at 20–24.)

Plaintiff is correct that the prima facie case under *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement." *Swierkiewicz*, 534 U.S. at 510. However, in both *Twombly* and *Iqbal*, the Supreme Court held that a plaintiff must nonetheless plead non-conclusory allegations that plausibly suggest a right to relief.[3] Accordingly, although a plaintiff alleging employment discrimination is not required to allege a prima facie case to survive a motion to dismiss, the prima facie elements are nonetheless valuable in determining whether plaintiff has alleged sufficient facts to state a claim that is plausible and not merely speculative. *See Jindasa v. Brigham Young Univ.-Haw.*, No. 14-00441 SOM/BMK, 2015 WL 3407832, at *3 (D. Haw. May 27, 2015) ("While [plaintiff] is not . . . strictly bound by the elements of a prima facie case, those elements are a useful tool in assessing whether [plaintiff] meets the requirement in Rule 8(a) of the Federal Rules of Civil Procedure that a complaint contain 'a short and plain statement of the claim *showing that the pleader is entitled to relief.*'"); *Fresquez v. County of Stanislaus*, No. 1:13-cv-1897-AWI-SAB, 2014 WL 1922560, at *2 (E.D. Cal. May 14, 2014) ("[C]ourts look to those [prima facie] elements . . . to decide, in light of judicial experience and

---

[3] The Supreme Court's decision in *Swierkiewicz* remains good law even after *Iqbal* and *Twombly*. In fact, in *Twombly*, the Supreme Court explicitly rejected the argument that its analysis "runs counter to *Swierkiewicz*." *Twombly*, 550 U.S. at 569–70.

common sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

Although plaintiff attempts to liken the allegations of his complaint to those alleged by the plaintiff in *Magden v. Easterday Farms* (*see* Doc. No. 22 at 24), consideration of that case serves only to cast the deficiencies of plaintiff's complaint into sharp relief. In *Magden*, another case involving alleged religious discrimination against a non-Mormon plaintiff, the plaintiff alleged facts presenting a prima facie case that his supervisor gave him a copy of the Mormon Bible while they were at work and proceeded to ask plaintiff approximately every two weeks thereafter whether plaintiff had read selected verses. *Magden v. Easterday Farms,* No. 2:16-cv-00068-JLQ, 2017 WL 1731705, at *2 (E.D. Wash. May 3, 2017). The plaintiff in *Magden* complained about the proselytizing, but his complaint was ignored and no investigation was conducted. *Id.* When his supervisor confronted him about the complaint, the plaintiff replied that he "only wanted to talk about work, and not personal matters." *Id.* Plaintiff's supervisor accused plaintiff of being "defiant," and then terminated plaintiff later that same day purportedly "due to poor communication." *Id.*

In contrast, here, plaintiff's complaint contains no comparable allegations that support an inference that adverse employment actions were taken because of plaintiff's refusal or his wife's refusal to follow his employer's religious beliefs. The complaint contains, for example, no allegations of any statements made by plaintiff's supervisors invoking religion in any way. Though plaintiff alleges that Washburn "pressured" plaintiff and his wife to join the LDS Church "shortly after" plaintiff began his employment with defendant in 2006 (Doc. No. 1 at ¶ 12), there are no factual allegations in the complaint regarding what Washburn did or said to "pressure" plaintiff, and there are no allegations regarding whether Washburn continued to pressure plaintiff after 2006. Indeed, there are not even any allegations upon which to plausibly suggest that plaintiff's refusal to join the church played any role in his suspension in late 2015 and early 2016—nearly a decade after the alleged pressure to join the church. There are also no allegations in the complaint plausibly suggesting that plaintiff's wife's disassociation from the LDS Church in 2010 (*id.* at ¶ 14) played any role in plaintiff's suspension from his position nearly six years

11

later. Moreover, excluding Washburn, plaintiff identifies other employees who engaged in allegedly discriminatory conduct against him—including Will Mangrum, Christine Farris, Jeff Davis, Claresta Dennis, and Robert Long—but does not allege whether any of these individuals are members of the LDS Church. There are also no allegations in the complaint that employees who are members of the LDS Church were treated more favorably than plaintiff. Although plaintiff alleges in conclusory fashion that all of the adverse actions taken against him were because plaintiff is non-Mormon, this is simply a "naked assertion[] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678.

Defendant's motion to dismiss for failure to state a claim of disparate treatment will therefore be granted.

**B.    Hostile Work Environment**

Defendant also moves to dismiss plaintiff's second cause of action for hostile work environment. Title VII prohibits an employer from "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To state a cognizable hostile work environment claim under Title VII, the plaintiff must allege facts showing that his work environment was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (citation omitted); *see also Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986). To be actionable, the objectionable environment must be both objectively and subjectively offensive. *See Harris*, 510 U.S. at 21–22; *see also Reynaga*, 847 F.3d at 687. "Occasional or isolated incidents, unless especially severe, are insufficient" to support a Title VII claim." *Jackson v. Bd. of Equalization*, No. CIV S–09–1387 FCD DAD PS, 2010 WL 3733983, at *10 (E.D. Cal. Sept. 20, 2010); *see also Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000).

Defendant argues that because no "non-discrete" act of alleged hostility occurred within 45 days of plaintiff's contact with an EEO counselor, any hostile work environment claim is time-barred. (Doc. No. 20-1 at 18.) Defendant further argues that none of the incidents alleged in the complaint relate to the LDS Church or plaintiff's non-affiliation with the Church, nor are the

incidents sufficiently severe or pervasive to support a hostile work environment claim. (*Id.* at 16–18.)

Importantly, the Ninth Circuit has held that "[i]f the flames of an allegedly hostile environment are to rise to the level of an actionable claim, they must do so based on the fuel of timely *non-discrete acts*." *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005) (emphasis added); *see also Yonemoto v. Shinseki*, 3 F. Supp. 3d 827, 842 (D. Haw. 2014) ("In determining whether a claim is timely, there is a distinction between discrete acts of discrimination and/or retaliation, versus hostile work environment claims."). While a discrete act is an unlawful practice that gives rise to an actional claim of discrimination or retaliation, such as "termination, failure to promote, denial of transfer, or refusal to hire," a hostile work environment claim is based on the cumulative effect of non-discrete acts that may not be actionable on their own. *Yonemoto*, 3 F. Supp. 3d at 842 (quoting *Morgan*, 536 U.S. at 114).

In his opposition to the pending motion, plaintiff admits that the conduct underlying his hostile work environment claim is the same "background evidence" in support of his disparate treatment claim. According to plaintiff, this conduct includes the following:

> (1) Washburn refused to take any action when Albro complained that his cubicle was reassigned and some of his personal property was missing; (2) Albro was not selected for a Division Head position; (3) Washburn exposed Albro to a safety risk by allowing Albro to continue using a fume hood in Albro's laboratory that had failed a safety inspection; (4) management, including Washburn, falsely accused Albro of mismanaging an incident involving someone's multiple attempts to access Albro's explosives safe; (5) someone wrote "TO BE FIRED" next to Albro's name on a whiteboard; (6) Washburn falsely accused Albro of having an unauthorized gun; (7) Washburn, in violation of policy and procedure, directed another manager to gain access to the combinations on Albro's explosives safe and prevented Albro from receiving emails about an upcoming Explosives Safety Inspection; (8) management planned to move Albro under a different manager, a demotion that would require Albro to leave his laboratory and equipment behind and under Washburn's control; (9) Washburn and another manager ordered Albro to cut the locks off the secure area in his laboratory, and when Albro expressed concerns about this plan, threatened to escort Albro to base counseling; (10) a recommendation was made that Albro's security clearance be removed, and management required Albro to undergo a psychological examination; and (11) the Navy subjected Albro to an inquiry based on false allegations and gross distortions.

(Doc. No. 22 at 25–26) (citations omitted). Plaintiff argues in conclusory fashion that his hostile

work environment claim is not time-barred "because all of the acts . . . are part of the same unlawful employment practice and at least one act falls within the time period." (*Id.* at 27) (citing *Lyons*, 307 F.3d at 1106).

Plaintiff's opposition, however, does not identify which act constitutes the "at least one act" that purportedly falls within the 45-day limitations period. The latest of the alleged acts comprising the "background evidence," is the investigation conducted by Robert Long, from approximately July to October 2015 (*See* Doc. No. 1 at ¶¶ 32–35), which is more than 45 days prior to plaintiff's initial contact with an EEO counselor on January 19, 2016. (*See* Doc. No. 20-7 at 3.) At the hearing on the pending motion to dismiss, counsel for plaintiff argued that the "at least one act" falling within the 45-day limitations period is the Notice of Proposed Suspension, issued to plaintiff on December 9, 2015. However, because the Notice of Proposed Suspension is a discrete act, it cannot form the basis of plaintiff's hostile work environment claim. *Porter*, 419 F.3d at 893; *see also Hayden v. Potter*, No. 06CV0923 JAH (NLS), 2010 WL 3895066, at *4–5 (S.D. Cal. Sept. 30, 2010) (recognizing a proposed suspension as a discrete act); *Magadia v. Napolitano*, No. 06 Civ. 14386(CM), 2009 WL 510739, at *12 (S.D.N.Y. Feb. 26, 2009) (same); *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 329 (D. Md. 2003) (same).

The court will therefore also grant defendant's motion to dismiss plaintiff's hostile work environment claim.

**C.     Retaliation**

Finally, defendant moves to dismiss plaintiff's third cause of action for retaliation. Title VII prohibits retaliation by an employer "against an employee for making a charge or otherwise participating in a Title VII proceeding." *Nilsson v. City of Mesa*, 503 F.3d 947, 953 (9th Cir. 2007). Under § 704 of the Civil Rights Act of 1964, it is unlawful:

> for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].

42 U.S.C. § 2000e-3 (2000). To make out a prima facie case of retaliation under Title VII, a plaintiff must allege facts demonstrating that "(1) [he] engaged in a protected activity, (2) [he]

14

suffered an adverse employment action, and (3) there was a causal link between [his] activity and the employment decision." *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065–66 (9th Cir. 2003) (quoting *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1196–97 (9th Cir. 2003)); *see also Poland v. Chertoff*, 494 F.3d 1174, 1179–80 (9th Cir. 2007) ("To establish a claim of retaliation, a plaintiff must prove that (1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal link between the plaintiff's protected activity and the adverse employment action.").

A plaintiff can satisfy the first element of a Title VII retaliation claim, participation in a protected activity, by alleging that he filed a formal or informal complaint regarding unlawful employment practices. *See Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000); *Moyo v. Gomez*, 40 F.3d 982, 985 (9th Cir. 1994). The disputed employment practices need not have been actually unlawful; plaintiff need only show that his belief that an unlawful employment practice occurred was "reasonable." *Id.* As to the second element, for purposes of a retaliation claim, a challenged action must be "materially adverse," meaning that it would dissuade a reasonable worker from exercising protected rights. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Ray v. Henderson*, 217 F.3d 1234, 1242–43 (9th Cir. 2000) (describing an adverse employment action as "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity"); *Xing Lin v. Potter*, No. C 10–03757 LB, 2011 WL 233053, at *11 (N.D. Cal. Jan. 22, 2011) (noting that the standard for "materially adverse employment decision" in the retaliation context is even lower than that required for a Title VII discrimination claim). Finally, a plaintiff may establish a causal link between the protected activity and the adverse action by circumstantial evidence, including an employer's knowledge of the protected activity or proximity in time between the protected action and the adverse employment action. *See Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988); *Passantino*, 212 F.3d at 507 ("[W]hen adverse decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred."). To ultimately prevail on a claim of retaliation, the Supreme Court has clarified that the causal connection

between the protected activity and the adverse employment action must be but-for causation. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Plaintiff argues that he first engaged in protected activity when he complained to Human Resources and management in March and June 2015 that "he worked in an unsupportive work environment." (Doc. No. 1 at ¶ 24; Doc. No. 22 at 28–29.) Complaining about an "unsupportive" work environment, however, does not constitute protected activity under Title VII. "Protected activity includes the filing of a charge or a complaint, or providing testimony regarding an employer's alleged unlawful practices, as well as engaging in other activity intended to oppose an employer's discriminatory practices." *Raad*, 323 F.3d at 1197 (internal quotations and brackets removed); *see also Finley v. United Parcel Serv. Inc.*, No. CV-16-00055-PHX-ROS, 2018 WL 6422082, at *12 (D. Ariz. Mar. 30, 2018) (noting that protected activity "must plausibly bear some relation to discrimination on the basis of a protected characteristic" and that "general complaints about the workplace or unfairness are not sufficient"); *Gutierrez v. Kaiser Found. Hosps., Inc.*, No. C 11-3428 CW, 2012 WL 5372607, at *6 (N.D. Cal. Oct. 30, 2012) ("[T]o constitute protected activity, [the plaintiff] must have alerted his employer to his belief that discrimination, not merely unfair personnel treatment, had occurred."). Defendant's motion to dismiss plaintiff's retaliation claim will be granted insofar as plaintiff's retaliation claim is premised on his complaint about an "unsupportive work environment."

The parties do not dispute, however, that plaintiff engaged in protected activity when he contacted an EEO counselor on January 19, 2016. (*See* Doc. No. 20-1 at 19.) Nonetheless, defendant argues that plaintiff's retaliation claim still fails because the alleged retaliatory actions identified by plaintiff "flowed directly from the Notice of Proposal to Suspend, which occurred before Plaintiff engaged in protected EEO activity." (*Id.* at 19–20.) Defendant therefore argues that plaintiff cannot plausibly claim that, "but for" his engagement in protected activity, those decisions would not have occurred. (*Id.*) As defendant notes, the Supreme Court has held that "[e]mployers need not suspend previously planned [adverse actions] upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatsoever of causality." *Clark Cty. Sch. Dist. v.*

*Breeden*, 532 U.S. 268, 272 (2001). The Supreme Court in *Breeden*, however, analyzed whether the plaintiff had met her burden at the summary judgment stage, and therefore does not dictate the court's analysis here.

At the pleading stage, the causal link is construed broadly. A plaintiff must merely allege "that the protected activity and the negative employment action are not completely unrelated." *See Emeldi v. Univ. of Or.*, 698 F.3d 715, 726 (9th Cir. 2012) (citing *Poland*, 494 F.3d at 1181 n.2). Here, plaintiff's factual allegations are sufficient to draw a reasonable inference that the imposition of the suspension, as well as his reassignment and removal from his laboratory, were not completely unrelated to his protected activity because of the close temporal proximity between the events. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1035 (9th Cir. 2006) ("[C]ausation sufficient to establish the third element of the prima facie case may be inferred from . . . the proximity in time between the protected action and the allegedly retaliatory employment decision.") (quoting *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)). Here, after plaintiff contacted an EEO counselor on January 19, 2016, defendant sustained his proposed suspension on February 16, 2016. (Doc. No. 1 at ¶ 103.) Plaintiff alleges that on February 23, 2016, he was also removed from his laboratory, forced to turn over custody of his equipment, demoted, and required to report to Martin Minthorn. (*Id.* at ¶¶ 104–05.) While evidence of temporal proximity alone may not satisfy plaintiff's ultimate burden of proving "but for" causation, as noted above, plaintiff is not required to meet that burden at the pleading stage.

Defendant's motion to dismiss plaintiff's retaliation claim, to the extent that it is based on plaintiff's protected EEO activity, will therefore be denied.

**D.     Leave to Amend**

Defendant argues that any dismissal should be with prejudice. (Doc. No. 23 at 11.) Defendant argues that because plaintiff did not respond to defense counsel's meet-and-confer efforts and did not request leave to amend in his opposition brief, the granting of leave to amend would be futile. (*Id.*)

Federal Rule of Civil Procedure 15 instructs courts to "freely give leave when justice so requires" and that rule is "to be applied with extreme liberality." *Eminence Capital, LLC v.*

17

*Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Nevertheless, leave to amend need not be granted where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile. *See Amerisource Bergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citing *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999)). "Prejudice to the opposing party is the most important factor." *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31 (1971)).

Here, at this early stage of the litigation, the court does not find that granting leave to amend would be futile with respect to plaintiff's disparate treatment claim and retaliation claim, insofar as the latter is based on plaintiff's complaint to Human Resources and management regarding an "unsupportive work environment." At the hearing on the pending motion to dismiss, plaintiff's counsel represented that additional facts could be alleged to address the deficiencies raised by defendant with respect to those claims. Accordingly, plaintiff will be granted twenty-one days from the date of service of this order in which to file a first amended complaint, should he wish to do so.

## CONCLUSION

For the reasons set forth above,

1. Defendant's motion to dismiss (Doc. No. 20) is granted in part and denied in part;
2. To the extent that plaintiff's disparate treatment cause of action is based on incidents not alleged in his EEO complaint or incidents occurring more than 45 days prior to plaintiff's initial EEO contact on January 19, 2016, that cause of action is dismissed with prejudice;
3. Plaintiff's disparate treatment cause of action is otherwise dismissed with leave to amend;
4. Plaintiff's hostile work environment cause of action is dismissed with prejudice as untimely;

/////

5. Plaintiff's retaliation cause of action, to the extent that it arises from plaintiff's complaint to Human Resources and management regarding an "unsupportive work environment," is dismissed with leave to amend;

6. Defendant's motion to dismiss is otherwise denied; and

7. Any amended complaint plaintiff wishes to file shall be due within twenty-one days of the date of service of this order.

IT IS SO ORDERED.

Dated: **June 26, 2019**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE