UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ALBRO, | No. 1:18-cv-01156-TLN-CDB |
| Plaintiff, | |
| v. | **ORDER** |
| CARLOS DEL TORO, | |
| Defendant. | |

This matter is before the Court on Defendant Carlos Del Toro's, in his official capacity as Secretary of the United States Department of the Navy ("Defendant"), Motion for Summary Judgment.[1]  (ECF No. 78.)  Plaintiff William Albro ("Plaintiff") filed an opposition (ECF No. 84), and Defendant filed a reply (ECF No. 87).  For the reasons set forth below, the Court DENIES Defendant's motion.

///

///

---

[1] At the time this action was brought, Richard V. Spencer was the Secretary of the Navy. (*See* ECF No. 1.)  Secretary Spencer was succeeded by Thomas B. Modly who served as Acting Secretary of the Navy until the appointment and confirmation of Carlos Del Toro.  (*See* ECF No. 32.)  The Court therefore substitutes Defendants Richard V. Spencer and Thomas B. Modly for Defendant Carlos Del Toro.  *See* Fed. R. Civ. P. 25(d) (court may order substitution of a public officer who ceases to hold office while the action is pending).

1

I.  **FACTUAL AND PROCEDURAL BACKGROUND**[2]

A detailed recitation of the factual and procedural history is not necessary as they are fully set forth in the prior orders of this Court and the Ninth Circuit. (*See* ECF Nos. 47, 57.) In short, this case concerns alleged employment discrimination against Plaintiff by his employer, the United States Navy, based on Plaintiff's non-affiliation with the Church of Jesus Christ of Latter-day Saints ("LDS Church").

Plaintiff was hired as a research chemist by the United States Navy's Naval Air Warfare Center Weapons Division ("NAWCWD") in China Lake, CA. (ECF No. 78-2 at 1.) Plaintiff began working at NAWCWD's Combustion Sciences Branch in 2006 alongside his coworker Ephraim Washburn ("Washburn"). (*Id.*; ECF No. 78-1 at 3–4.) Washburn is a member of the LDS Church — along with several other NAWCWD employees in China Lake — and attempted to recruit Plaintiff to become a member once they began working together. (ECF No. 78-1 at 4; ECF No. 78-2 at 1; ECF No. 57 at 2; ECF No. 84-1 at 14.) Although Washburn successfully recruited Plaintiff's wife, Plaintiff never joined the LDS Church and his wife later dissociated. (ECF No. 57 at 2.)

In 2012, Washburn and Plaintiff's supervisor retired, and they both applied for the now-vacant position. (ECF No. 78-1 at 4; ECF No. 84-1 at 15.) NAWCWD promoted Washburn to head the Combustion Sciences Branch, and Washburn became Plaintiff's direct supervisor. (ECF No. 78-1 at 4; ECF No. 84-1 at 15.) Plaintiff believes Washburn was promoted instead of him because of Washburn's ties to the LDS Church. (ECF No. 84 at 12.)

In 2015, Jeffrey Davis ("Davis"), Washburn's first-level supervisor and Plaintiff's second-level supervisor, became aware of issues at the branch between Washburn and Plaintiff and requested they attend mediation.[3] (ECF No. 78-2 at 2; ECF No. 78-1 at 4–5.) The mediation was

---

[2]   The facts herein are undisputed unless otherwise indicated.

[3]   The parties dispute the source of the issues. Plaintiff alleges the Navy, and Washburn, began discriminating against him because he refused to join the LDS Church. (*See, e.g.*, ECF No. 84 at 12.) Defendant, on the other hand, attributes the issues to Plaintiff's purported misconduct and insubordination (described more below). (*See, e.g.*, ECF No. 78-1 at 4–6.)

2

1 unsuccessful, and Davis ordered Christine Farris ("Farris"), a human resources employee, to
2 assist him with an informal investigation into the branch (the "Davis Investigation"). (ECF No.
3 78-2 at 2; ECF No. 78-1 at 5.) As part of the Davis Investigation, Davis and Farris interviewed
4 Washburn, Plaintiff, and several other employees at the branch. (ECF No. 78-2 at 2.) Plaintiff
5 reported to Davis and Farris the alleged discriminatory and unfair treatment he had been receiving
6 since he declined to join the LDS Church and Washburn became his supervisor, including
7 Washburn allegedly reassigning his cubicle and falsely accusing Plaintiff of mismanagement.
8 (ECF No. 78-1 at 5; ECF No. 84-1 at 8–10.) The Davis Investigation revealed that Plaintiff
9 engaged in insubordinate and inappropriate behavior, and Davis admonished Plaintiff to follow
10 his chain of command and to cease any inappropriate conduct. (ECF No. 78-1 at 6; ECF No. 84-1
11 at 15.)
12     A few months later, however, Davis and Washburn reprimanded Plaintiff for installing
13 locks, which prevented other employees from accessing certain research equipment at the branch.
14 (ECF No. 78-1 at 6; ECF No. 84-1 at 15.) Davis and Washburn requested Plaintiff remove the
15 locks, but Plaintiff refused. (ECF No. 78-1 at 6; ECF No. 84-1 at 15.) Shortly thereafter,
16 Gregory Wheelock ("Wheelock"), Plaintiff's third-level supervisor, ordered a formal
17 investigation into Plaintiff's conduct (the "Wheelock Investigation"). (ECF No. 78-1 at 6; ECF
18 No. 78-2 at 2.) The Wheelock Investigation was conducted by Robert Long ("Long"), a division
19 head outside of Plaintiff's chain of command, and it revealed Plaintiff engaged in misconduct,
20 including making inappropriate comments, impeding the research of colleagues by refusing to
21 share equipment, and failing to follow instructions from his supervisors. (ECF No. 78-1 at 7–9;
22 ECF No. 78-2 at 2; ECF No. 84-1 at 4.) Long recommended Plaintiff be administratively
23 disciplined for his misconduct. (ECF No. 78-1 at 9; ECF No. 78-2 at 2.) Wheelock reviewed
24 Long's report and issued a Notice of Proposed Suspension to Charles Bechtel ("Bechtel"),
25 Plaintiff's fourth-level supervisor, on December 9, 2015, recommending Plaintiff be suspended.
26 (ECF No. 78-1 at 9; 78-2 at 2.)
27     In February 2016, Bechtel adopted Wheelock's recommendation and suspended Plaintiff
28 for seven days. (ECF No. 78-1 at 9–10; ECF No. 78-2 at 2; ECF No. 84-1 at 17.) Wheelock

1 thereafter reassigned Plaintiff to the Solid Propulsion and Energetics Branch.  (ECF No. 78-1 at
2 9–10; ECF No. 78-2 at 2; ECF No. 84-1 at 17.)

3 After Wheelock issued his Notice of Proposed Suspension but before Bechtel issued a
4 decision, Plaintiff contacted the Navy's Equal Employment Opportunity ("EEO") office to
5 complain about the discriminatory behavior he had been receiving.  (ECF No. 78-1 at 10; ECF
6 No. 84 at 7.)  Once Bechtel's decision was final, Plaintiff submitted a formal complaint of
7 discrimination to the EEO office, alleging Wheelock and Bechtel's decisions were discriminatory
8 actions taken because Plaintiff refused to join the LDS Church.  (ECF No. 78-1 at 10; ECF No. 84
9 at 7.)

10 Plaintiff commenced this action against Defendant in April 2018 before filing his First
11 Amended Complaint ("FAC") on July 17, 2019, alleging two causes of action under Title VII of
12 the Civil Rights Act of 1964 (42 U.S.C. § 2000e, et seq.) ("Title VII"): (1) religious
13 discrimination; and (2) retaliation.  (ECF No. 28.)  On April 22, 2020, the Court granted
14 Defendant's motion to dismiss both claims with prejudice pursuant to Federal Rule of Civil
15 Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted, and the
16 Clerk of Court entered Judgment that same day.  (ECF Nos. 47, 48.)  Plaintiff timely appealed,
17 and the Ninth Circuit affirmed in part, reversed in part, and remanded the matter, finding Plaintiff
18 adequately alleged discriminatory treatment but did not adequately allege retaliation.  (ECF No.
19 57.)

20 On June 15, 2023, Defendant filed the instant motion for summary judgment.  (ECF No.
21 78.)  Plaintiff filed an opposition (ECF No. 84), and Defendant filed a reply (ECF No. 87).  This
22 case was reassigned to this Court on April 3, 2024.  (ECF No. 91.)

23 **II.     STANDARD OF LAW**

24 Summary judgment is appropriate when the moving party demonstrates no genuine issue
25 of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed.
26 R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary
27 judgment practice, the moving party always bears the initial responsibility of informing the
28 district court of the basis of its motion, and identifying those portions of "the pleadings,

4

1  depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"
2  which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v.*
3  *Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof
4  at trial on a dispositive issue, a summary judgment motion may properly be made in reliance
5  solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id*. at
6  324 (internal quotation marks omitted). Indeed, summary judgment should be entered against a
7  party who does not make a showing sufficient to establish the existence of an element essential to
8  that party's case, and on which that party will bear the burden of proof at trial.

9  If the moving party meets its initial responsibility, the burden then shifts to the opposing
10 party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus.*
11 *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv.*
12 *Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute,
13 the opposing party may not rely upon the denials of its pleadings, but is required to tender
14 evidence of specific facts in the form of affidavits, and/or admissible discovery material, in
15 support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must
16 demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the
17 suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that
18 the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for
19 the nonmoving party. *Id*. at 251–52.

20 In the endeavor to establish the existence of a factual dispute, the opposing party need not
21 establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
22 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
23 trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is
24 to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for
25 trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's
26 note on 1963 amendments).

27 In resolving the summary judgment motion, the court examines the pleadings, depositions,
28 answers to interrogatories, and admissions on file together with any applicable affidavits. Fed.

R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

### III.   ANALYSIS

The only remaining claim is Plaintiff's Title VII religious discrimination claim on a theory of disparate treatment. "To survive summary judgment on his disparate treatment claim, [Plaintiff] must establish that his job performance was satisfactory and provide evidence, either direct or circumstantial, to support a reasonable inference that his termination was discriminatory." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004) (citing *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017 (4th Cir. 1996)). "The amount of evidence that [Plaintiff] must produce is 'very little,' … so long as it is more than 'purely conclusory allegations of alleged discrimination, with no concrete, relevant particulars.'" *Id.* (citations omitted).

Evidence of discrimination is analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that approach, Plaintiff has the initial burden of establishing a prima facie case of discrimination. *Id.* at 802. If discharged, the burden then shifts to Defendant to articulate legitimate, nondiscriminatory reasons for the adverse action(s) complained of. *Id.* Finally, the burden shifts back to Plaintiff to demonstrate the reasons proffered by Defendant were merely pretextual and the true reason was impermissible discrimination. *Id.*

6

A. <u>Prima Facie Case of Discrimination</u>

To establish a prima facie case of religious discrimination, Plaintiff must demonstrate:

> (1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.

*Peterson*, 358 F.3d at 603 (citations omitted). Defendant does not contest the first three elements.

For the fourth element, Defendant contends Plaintiff has not and "cannot identify a similarly situated employee that was treated more favorably based on membership in the LDS Church." (ECF No. 78-1 at 14.) In opposition, Plaintiff argues Defendant misstates the appropriate standard, and that other circumstances surrounding the adverse employment action give rise to an inference of discrimination by the Navy. (ECF No. 84 at 11–12.)

The Court finds Defendant has failed to demonstrate he is entitled to judgment as a matter of law. Defendant contends Plaintiff has failed to establish a prima facie case of religious discrimination because Plaintiff does not and cannot identify a similarly situated employee that was treated more favorably based on membership in the LDS Church. (ECF No. 78-1 at 14.) As Plaintiff correctly points out, however, such a showing is not required. Plaintiff may also establish a prima facie case of discrimination by showing other circumstances surrounding the adverse employment action give rise to an inference of discrimination, *Peterson*, 358 F.3d at 603, and that is what Plaintiff attempts to show here. Specifically, Plaintiff contends Washburn had a discriminatory animus toward him after he declined to join the LDS Church and this animus has a causal connection to his suspension and eventual transfer to a different branch. (ECF No. 84 at 21–22.)

B. <u>Legitimate, Nondiscriminatory Reasons and Pretext</u>

Defendant next contends that "[e]ven if the Court finds that [Plaintiff] has established a prima facie case of discrimination, [Plaintiff's] disparate treatment claim nevertheless fails because the Navy had a legitimate, nondiscriminatory reason for suspending [Plaintiff] and transferring him to a new group." (ECF No. 78-1 at 14.) Specifically, Defendant argues the

Navy did not discriminate against Plaintiff based on his non-affiliation with the LDS Church because the people who took the administrative actions — Davis, Farris, Long, Wheelock, and Bechtel — are not members of the church, and they suspended and transferred Plaintiff (or recommended he be suspended and/or transferred) because of Plaintiff's misconduct. (ECF No. 78-1 at 14–15.)

In opposition, Plaintiff contends the Navy's reasons for suspending and transferring him are pretexts, and that the adverse employment actions were motivated or influenced by Washburn's bias toward him for refusing to join the LDS Church. (ECF No. 84 at 15–22.) To make this argument, Plaintiff utilizes the "cat's paw" theory of liability. (*Id.* at 15.) Under that theory, even if a biased employee was not the principal decisionmaker, the biased employee's discriminatory motive will be imputed to the employer if the subordinate influenced, affected, or was involved in the adverse employment decision. *Poland v. Chertoff*, 494 F.3d 1174, 1183 (9th Cir. 2007). Plaintiff maintains that is what occurred here. To support his argument, Plaintiff relies on several exhibits and deposition transcripts that purportedly show Washburn's bias toward Plaintiff, and that his bias influenced Wheelock and Bechtel in their decision-making. (*See* ECF Nos. 84-1–84-32.) For example, Plaintiff lodged with the Court Washburn's deposition transcript, which indicates Washburn told Plaintiff during a performance review that "things would be political" going forward, and that Washburn discussed Plaintiff's potential reassignment with Wheelock prior to any official action being taken. (ECF No. 84-1 at 16.)

The Court finds there are genuine factual disputes as to whether Washburn was biased against Plaintiff and whether Washburn's alleged bias affected the ultimate decision to suspend and transfer Plaintiff to a different division. As the moving party, Defendant carries the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. Defendant argues Plaintiff's opposition does not contain "a single citation to any evidence" and therefore Plaintiff "cannot rest his claim 'on mere allegations or denials in the pleadings … .'" (ECF No. 87 at 4 (quoting *Anderson*, 477 U.S. at 256, 259).) Although Plaintiff does not cite specific evidence in

portions of his opposition motion (*see*, *e.g.*, ECF No. 84 at 21–22), Plaintiff is not merely relying on allegations or denials in the pleadings as Defendant suggests.  As noted above, Plaintiff submitted several documents in support of his opposition motion, including Washburn's deposition transcript, which indicates Washburn told Plaintiff during a performance review that "things would be political" going forward.  This evidence gives rise to an inference of discrimination and tends to contradict evidence that Plaintiff was suspended and transferred because of misconduct.  Washburn's deposition transcript further indicates Washburn discussed Plaintiff's potential reassignment with Wheelock before any official action was taken, indicating Washburn may have influenced or been involved in the decision to transfer Plaintiff.  (*See* ECF No. 84-1 at 16.)  As another example, Plaintiff submitted his own declaration that indicates Washburn confronted Plaintiff at work and threatened Plaintiff with physical harm, forcing Plaintiff to leave for the day.  (ECF No. 84-1 at 3; 84-31 at 3.)  Given the substantial history of adverse interactions with Washburn concerning the LDS Church and his subsequent managerial role over Plaintiff, a reasonable jury could find that the Navy's reasons for suspending and transferring Plaintiff are pretexts, and that the adverse employment actions were motivated or influenced by Washburn's bias toward Plaintiff for refusing to join the LDS Church.

### IV.   CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion for summary judgment. (ECF No. 78.)  The parties are ordered to file a Joint Status Report within thirty (30) days of the electronic filing date of this Order, indicating their readiness to proceed to trial and proposing trial dates.

IT IS SO ORDERED.

Date:  June 11, 2024

Troy L. Nunley
United States District Judge

9