1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11    WILLIAM ALBRO,

12                        Plaintiff,                    No. 1:18-cv-01156-TLN-CDB

13                    vs.

14                                                      **FINAL PRETRIAL ORDER**

15    JOHN PHELAN,

16                        Defendant.                    Trial Date: September 15, 2025
                                                        TIME: 9:00 a.m.
17

18          This Court held a Final Pretrial Conference on June 12, 2025.  Plaintiff William Albro

19    ("Plaintiff") is represented by Robert Scott Oswald, Briana L. Scholar, and Charles E. Early.

20    Defendant John Phelan, the Secretary of the Navy, ("Defendant")[1] is represented by William

21    Dean Carter and Joseph B. Frueh.  After the hearing, the Court makes the following findings and

22    orders:

23    **I.    JURISDICTION / VENUE**

24          This Court has jurisdiction pursuant to 28 U.S.C. § 1331.  Venue is appropriate in the

25    Eastern District of California, Sacramento Division, under 28 U.S.C. § 1391.

26

27    [1]    Pursuant to Federal Rule of Civil Procedure 25(d), Defendant John Phelan shall be
      substituted for Defendant Carlos Del Toro.  The Clerk of Court shall update the docket
28    accordingly.

                                                1

1

2    **II.    JURY OR NON-JURY TRIAL**

3         Plaintiff demands a jury trial.  Defendant does not contest this.  Accordingly, this matter

4    shall be tried before a jury.  The Court shall empanel eight (8) jurors.

5    **III.    DATE AND LENGTH OF TRIAL**

6         Trial is scheduled for **Monday, September 15, 2025**.  The Court will allow up to ten (10)

7    days for trial.

8    **IV.    TIME LIMITS FOR OPENINGS, CLOSINGS, AND REBUTTAL**

9         The Court grants Plaintiff forty-five (45) minutes for opening and sixty (60) minutes for

10   closing.  The Court grants Defendants (30) minutes for opening and forty (40) minutes for

11   closing.

12   **V.    UNDISPUTED FACTS**

13      1.  The Department of Navy's Naval Air Warfare Center Weapons Division hired Plaintiff as

14          a research chemist in China Lake, California.

15      2.  Plaintiff is currently employed by the Naval Air Warfare Center Weapons Division as a

16          research chemist in the Solid Propulsion and Energetics Branch.

17      3.  From 2006 to 2016, Ephraim Washburn ("Washburn") was Plaintiff's first level

18          supervisor as the Branch Head of the Combustion Sciences Branch.

19      4.  Washburn is a member of the Church of Jesus Christ of Latter-day Saints ("LDS

20          Church").

21      5.  From 2010 to 2016, Jeffrey Davis ("Davis") was Plaintiff's second-level supervisor and

22          Washburn's first-level supervisor as a Division Head.

23      6.  In early 2015, Davis and an employee from human resources, Christine Farris ("Farris"),

24          conducted an investigation involving Plaintiff and Washburn.

25      7.  This investigation involved Davis and Farris interviewing Washburn, Plaintiff, and several

26          of Plaintiff's co-workers in the Combustion Sciences Branch in late February and early

27          March 2015.

28   ///

1    ///

2    **VI.     DISPUTED FACTUAL ISSUES**

3    Plaintiff contends the following factual issues are disputed:

4         1. Whether Plaintiff and Washburn's relationship was professional and friendly.

5         2. Whether Mary Albro asked Washburn to baptize her and whether Washburn baptized her

6            into the LDS Church in December 2007.

7         3. Whether Washburn said the Albros moved shortly after he baptized Mary Albro ("Mary").

8         4. Whether Washburn and Plaintiff traveled together with their families through France

9            while there for work.

10        5. Whether there were indications Plaintiff had already been making offensive remarks

11           relating to religion to his co-workers.

12        6. Whether Plaintiff told Davis and Farris that Washburn had baptized his wife and described

13           the LDS Church baptism as a "wet t-shirt contest."

14        7. Whether there was any evidence that Washburn had any impact or influence over Davis's

15           investigation.

16        8. Whether Albro left because he was threatened with physical harm by Davis and

17           Washburn.

18        9. Whether Robert Long's ("Long") findings were erroneous.

19        10. Whether Long substantiated an allegation from Plaintiff's co-worker who reported hearing

20           Plaintiff saying "your religion says you should eat fruit of the tree and that's monkey

21           brains."

22        11. Whether Plaintiff told Megan Rex ("Rex") that one of his co-workers who was a member

23           of the LDS Church had beaten his ex-wife and given her a black eye.

24        12. Whether Brent Hedman ("Hedman") denied having any face-to-face conversation with

25           Plaintiff other than during one visit to his home.

26        13. Whether Hedman denied that Mary was introduced to him as Rick Albro's wife, claiming

27           he did not know Rick Albro.

28        14. Whether Hedman offered to help Plaintiff's career at China Lake if Plaintiff helped Trevor

1    Hedman ("Trevor") become successful.

2    15. Whether Farris said her first knowledge of a report from Albro was about Washburn not

3        letting Plaintiff attend a Christmas party.

4    16. Whether Farris said she did not know anything about Plaintiff raising issues of

5        discrimination to her and Davis in April 2014.

6    17. Whether Farris claimed the allegations raised by Plaintiff that initiated her meeting with

7        Davis and Plaintiff referenced religious discrimination or preferential treatment.

8    18. Whether Farris testified she was never made aware of Plaintiff having any complaints

9        preceding the Christmas party.

10   19. Whether Farris substantively edited Long's investigation report.

11   20. Whether Farris denied that Plaintiff was told he should resign in the meeting with Gregory

12       Wheelock ("Wheelock") during which the Notice of Proposed Suspension was presented

13       to Plaintiff.

14   21. Whether Washburn ever discussed Plaintiff in any context with Hedman.

15   22. Whether Washburn ever claimed he gave information about a patent to Steve Son ("Son").

16   23. Whether Plaintiff had locked himself out of his explosives safe and Washburn learned of

17       it when the fire department arrived.

18   24. Whether Washburn threatened to escort Plaintiff to counseling.

19   25. Whether Plaintiff ever lost funding.

20   26. Whether Washburn attempted to recruit Plaintiff to join the LDS Church.

21   27. Whether Washburn ever introduced Mary to anyone as "Rick's wife" after performing her

22       baptism.

23   28. Whether Matt Gross ("Gross"), a China Lake employee and a member of the LDS

24       Church, frequently invited Plaintiff to his home for LDS Church social gatherings.

25   29. Whether members of the LDS Church continued to contact Mary and try to bring her back

26       after she disassociated from the LDS Church.

27   30. Whether Plaintiff was jealous of Washburn's promotion to Branch Head.

28   31. Whether Trevor was "placed" in Plaintiff's workgroup.

32. Whether Trevor discussed religion with Plaintiff and attempted to recruit him to join the LDS Church.

33. Whether Washburn reassigned Plaintiff's cubicle after Plaintiff had an official office.

34. Whether Plaintiff interviewed for any positions in 2014.

35. Whether Washburn allowed Plaintiff to continue using a fume hood in his laboratory that had failed a safety inspection.

36. Whether Washburn told Plaintiff during his performance review that "it will be political from here on out."

37. Whether Plaintiff locked himself out of his explosives safe.

38. Whether Plaintiff reported the incident to the China Lake security team and whether Plaintiff called 911 to report the issue.

39. Whether Washburn falsely accused Plaintiff of mismanaging the situation and creating unnecessary panic by alerting 911.

40. Whether someone wrote "TO BE FIRED" next to Plaintiff's name on a whiteboard.

41. Whether Plaintiff met with Farris and Davis and complained of religious discrimination in March 2015.

42. Whether Will Mangrum ("Mangrum") wrongly charged 141 hours of work to Plaintiff's funding account in attempt to drain the account funds.

43. Whether Washburn incentivized Mangrum to sabotage Plaintiff's funds in exchange for Mangrum receiving a promotion.

44. Whether Washburn falsely accused Plaintiff of having an unauthorized gun.

45. Whether Washburn and Dennis told Plaintiff NCIS would interview Plaintiff about the unauthorized gun.

46. Whether Washburn told Plaintiff he could "get into the Montessori School" where Plaintiff's daughter attended, "any time I want to."

47. Whether Washburn directed Mangrum to gain access to the combinations on Plaintiff's explosives safe in violation of policy and procedure in or about early May 2015.

48. Whether Plaintiff was removed from a list regarding upcoming explosives safety

5

1    inspections.

2    49. Whether Davis and Farris but they refused to accept Plaintiff documentation about how he

3        had been targeted due to his refusal to join the LDS Church.

4    50. Whether Davis told Wheelock that Plaintiff had been disciplined.

5    51. Whether Plaintiff was moved to Martin Minthorn's ("Minthorn") workgroup after his

6        suspension in February 2016.

7    52. Whether Davis and Washburn threatened Plaintiff about he expressed concerns about

8        moving to Minthorn's workgroup.

9    53. Whether Plaintiff was required to undergo a psychological examination.

10   54. Whether the allegations made against Plaintiff were false.

11   55. Whether Plaintiff lost access to his lab and custody of his assets.

12   56. Whether Plaintiff was unable to secure facilities to continue to work on his projects after

13        he moved to work under Minthorn.

14   57. Whether Plaintiff still had access to the combustion sciences lab.

15   Defendant contends the following factual issues are disputed:

16   1. Whether Plaintiff was the victim of intentional discrimination based on his non-affiliation

17        with the LDS Church when the Naval Air Warfare Center Weapons Division suspended

18        him for seven days and reassigned him to a different supervisor in February 2016.

19   2. The existence and extent of any damages that Plaintiff sustained as a result of these

20        decisions.

21   **VII.    DISPUTED EVIDENTIARY ISSUES & MOTIONS *IN LIMINE***

22        The Court sets the filing deadline for motions *in limine* as **August 22, 2025**, with

23   opposition briefs due by **August 29, 2025**, and reply briefs due by **September 5, 2025**.  The

24   Court set a hearing to rule on the motions *in limine* to take place on **September 15, 2025,** at

25   9:00am in Courtroom 2 before Judge Troy L. Nunley.

26   **VIII.   RELIEF SOUGHT**

27   Plaintiff seeks the following:

28        Backpay and front pay of $653,576.3; immediate removal from the supervision of any

6

1  member of the Church of Jesus Christ of Latter-Day Saints, including but not limited Dr. Ephraim

2  Washburn, Dr. Matt Gross, Dr. Matt Walker, Dr. Ryan Hunter; immediate transfer to an

3  equivalent position under different supervisory authority with full and unrestricted access to a

4  research laboratory and all laboratory equipment; compensatory damages, including damages for

5  emotional distress and loss of reputation; injunctive or other equitable relief, as this Court may

6  deem appropriate; reasonable litigations costs, including attorneys' fees; and any other just and

7  equitable relief this Court deems appropriate.

8  Defendant seeks the following:

9      Defendant seeks a judgment of no liability and an award of costs.  Defendant argues

10  entitlement to equitable relief, such as back-pay or front-pay, must be decided by the Court.

11  Defendant avers that Plaintiff is not entitled to the relief requested or any relief whatsoever, and

12  specifically avers that the Court may not alter the employment benefits, privileges, or statuses of

13  persons who are not parties to this case, or grant "full and unrestricted access" to sensitive

14  military research laboratories, equipment, or other federal property or interests.

15  **IX.   POINTS OF LAW**

16      The parties shall alert the court to disputes about the applicable law and legal standards.

17  Trial briefs addressing these points more completely shall be filed with this court no later than

18  **fourteen days** prior to the date of trial in accordance with Local Rule 285.

19  **X.   ABANDONED ISSUES**

20      Neither the parties nor the court have identified any abandoned issues.  Plaintiff's sole

21  remaining claim is a disparate-treatment claim against his federal employer, the Secretary of the

22  Navy, based on Plaintiff's non-affiliation and Plaintiff's wife's disassociation with the LDS

23  Church.

24  **XI.   WITNESSES**

25      Plaintiff and Defendant's lists of prospective witnesses are memorialized in the Joint

26  Pretrial Statement and are incorporated herein.

27      A.   No other witnesses will be permitted to testify unless: (1) the party offering the

28  witness demonstrates that the witness is for the purpose of rebutting evidence which could not be

7

1  reasonably anticipated at the Final Pretrial Conference, or (2) the witness was discovered after the

2  Final Pretrial Conference and the proffering party makes the showing required in section B

3  below.

4         B.      Upon the post-pretrial discovery of witnesses, the attorney shall promptly inform

5  the Court and opposing parties of the existence of the unlisted witnesses so that the Court may

6  consider at trial whether the witnesses shall be permitted to testify.  The evidence will not be

7  permitted unless: (1) the witnesses could not reasonably have been discovered prior to pretrial;

8  (2) the Court and opposing counsel were promptly notified upon discovery of the witnesses; (3) if

9  time permitted, counsel proffered the witnesses for deposition; and (4) if time did not permit, a

10  reasonable summary of the witnesses' testimony was provided by opposing counsel.

11  **XII.  EXHIBITS — SCHEDULES AND SUMMARIES**

12        Plaintiff and Defendant's lists of proposed exhibits are memorialized in the Joint Pretrial

13  Statement and are incorporated herein.

14        Plaintiff's exhibits shall be listed numerically.  Defendants' exhibits shall be listed

15  alphabetically.  The parties shall use the standard exhibit stickers provided by the Court Clerk's

16  Office:  pink for Plaintiffs and blue for Defendants.  After three letters, note the number of letters

17  in parenthesis (i.e., "AAAA(4)") to reduce confusion during the trial.  All multi-page exhibits

18  shall be fastened together and each page within the exhibit shall be numbered.  All photographs

19  shall be marked individually.  The list of exhibits shall not include excerpts of depositions which

20  may be used to impeach witnesses.

21        Each party may use an exhibit designated by the other.  In the event that Plaintiff and

22  Defendants offer the same exhibit during trial, that exhibit shall be referred to by the designation

23  the exhibit is first identified.  The Court cautions the parties to pay attention to this detail so that

24  all concerned will not be confused by one exhibit being identified with both a number and a letter.

25        A.      The Court will not permit introduction of other exhibits unless: (1) the party

26  proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence which

27  could not be reasonably anticipated at the Pretrial Scheduling Conference, or (2) the exhibit was

28  discovered after the Pretrial Scheduling Conference and the proffering party makes the showing

8

1   required in paragraph "B" below.

2          B.       Upon the post-pretrial discovery of exhibits, the attorneys shall promptly inform

3   the Court and opposing counsel of the existence of such exhibits so that the Court may consider at

4   trial their admissibility.  The exhibits will not be received unless the proffering party

5   demonstrates: (1) the exhibits could not reasonably have been discovered prior to pretrial; (2) the

6   Court and counsel were promptly informed of their existence; (3) counsel forwarded a copy of the

7   exhibit(s) (if physically possible) to opposing counsel.  If the exhibit(s) may not be copied, the

8   proffering counsel must show that he or she has made the exhibit(s) reasonably available for

9   inspection by opposing counsel.

10          C.       As to each exhibit, each party is ordered to exchange a copy identical to the

11   Court's copy, or other reproduction of the exhibit(s) in a three-ring binder(s) **no later than July**

12   **10, 2025.**  Any evidentiary objections are due no later than **July 16, 2025**, and a meet and confer

13   deadline is set for **July 21, 2025**.

14          D.       The attorney or representative for each party is directed to present one copy of the

15   exhibit(s) and exhibit list to the Court Clerk's Office, **no later than 3:00 p.m., on September 8,**

16   **2025**, or at such earlier time as may be ordered by the Court.  The Court shall be presented with a

17   copy of the exhibit(s) in a 3-ring binder(s) with a side tab identifying each exhibit by number or

18   letter.  Each binder shall be no larger than three inches in width and have an identification label

19   on the front and side panel.

20          E.       It is the duty of counsel to ensure that witnesses have access to a copy of exhibit(s)

21   if needed.

22   **XIII.   DISCOVERY DOCUMENTS**

23          A.       Lodging Deposition Transcripts and Video Files

24          It is the duty of counsel to ensure that any deposition transcripts which are to be used at

25   trial have been lodged with the Clerk of the Court **no later than September 8, 2025**.  The parties

26   are cautioned that a failure to discharge this duty may result in the Court precluding use of the

27   deposition or imposition of such other sanctions as the Court deems appropriate.

28          B.       Use of Depositions

9

1    The parties are ordered to exchange between themselves **no later than July 10, 2025,** a

2    final statement designating portions of depositions intended to be offered or read into evidence

3    (except for portions to be used only for impeachment or rebuttal).  Any evidentiary objections are

4    due no later than **July 16, 2025**, and a meet and confer deadline is set for **July 21, 2025**.  The

5    parties shall file their final statement with the Court **no later than September 8, 2025**.

6         C.    Interrogatories and Admissions

7         To the extent the parties intend to offer or read into evidence any portions of Answers to

8    Interrogatories or Admissions, a statement designating those discovery responses shall also be

9    filed and exchanged **no later than September 8, 2025** (except portions to be used only for

10   impeachment or rebuttal).

11   **XIV.   FURTHER DISCOVERY OR MOTIONS**

12        Discovery is closed and the deadline to file dispositive motions has passed.  The Parties

13   state they do not anticipate any further motions aside from motions *in limine*.

14   **XV.   STIPULATIONS**

15        The parties have made the following stipulations:

16        1.   Counsel for Plaintiff will be permitted to ask leading questions in the direct

17             examination of the following witnesses during Plaintiff's case-in-chief:

18                  a.   Robert Long

19                  b.   Julie Gervais

20                  c.   Christine Farris

21                  d.   Ephraim Washburn

22                  e.   Jeffrey Davis

23                  f.   Gregory Wheelock

24        2.   Defense counsel will be permitted to exceed the scope of the direct examination

25             during cross examination for former Navy employees called during Plaintiff's

26             case-in-chief.  The current list of former employees is:

27                  a.   Gregory Wheelock

28                  b.   Robert Lang

10

1             c.  Martin Minthrorn

2             d.  Darlene Soto

3             e.  Fred Blomshield

4      3.  The parties shall exchange proposed exhibit lists, counter-designations of

5          deposition testimony, proposed jury instructions and verdict forms no later than

6          July 10, 2025.

7      4.  The parties shall exchange proposed evidentiary objections no later than July 16,

8          2025.

9      5.  The parties shall meet and confer to discuss objections on July 21, 2025.

10  **XVI.  AMENDMENTS**

11     The parties do not anticipate any further amendments or dismissals.

12  **XVII.  SETTLEMENT CONFERENCE**

13     At the Final Pretrial Conference, the parties stated they would inform the Court at a later

14  date whether they wished to schedule a settlement conference.  The parties were informed

15  settlement conferences before available magistrate judges are determined on a "first come first

16  serve" basis.

17  **XVIII. AGREED STATEMENTS — JOINT STATEMENT OF CASE**

18     The parties are directed to meet and confer and to file a joint statement of the case **no**

19  **later than September 8, 2025**.  If the parties are unable to agree to a joint statement, the parties

20  may submit separate statements in separate filings **no later than September 8, 2025**.

21  **XIX.  SEPARATE TRIAL OF ISSUES**

22     The parties state any claim for equitable relief, including back-pay or front-pay must be

23  decided by the Court.  Should Plaintiff prevail, the Court shall decide any questions regarding

24  equitable relief.

25  **XX.  IMPARTIAL EXPERTS – LIMITATION OF EXPERTS**

26     The parties do not seek appointment of an impartial expert or any limitation on the

27  number of expert witnesses.  The court will not appoint an impartial expert witness or at this point

28  limit the number of expert witnesses, subject to the prevailing rules, other provisions of this order

1   and other court orders applicable to the calling of expert witnesses.

2   **XXI.   ATTORNEYS' FEES**

3   Plaintiff's Position:

4       Plaintiff seeks recovery of attorneys' fees and costs in an amount to be determined

5   following final adjudication of the matter. Plaintiff's counsel's time records and costs incurred are

6   recorded contemporaneously at the time they were incurred. Plaintiff will submit a bill of costs

7   and fee petition following adjudication in his favor.

8   Defendant's Position:

9       Defendant contends attorneys' fees are governed by 42 U.S.C. § 2000e-5(k).

10   **XXII.   TRIAL EXHIBITS AND TRIAL PROTECTIVE ORDER**

11       Neither party requests a trial protective order or special handling of trial exhibits pursuant

12   to Local Rule 138(e).

13   **XXIII. PROPOSED JURY INSTRUCTIONS, VOIR DIRE, VERDICT FORM**

14       A.   Jury Instructions

15       The parties shall use the Ninth Circuit Model Jury Instructions and any revisions.

16   Alternate instruction or authority may only be used if a Ninth Circuit Model Jury Instruction is

17   unavailable.  All instructions shall be, to the extent possible, concise, understandable, and free

18   from argument. *See* Local Rule 163(c).  **Parties shall also note that any modifications of**

19   **instructions from statutory authority, case law or from any form of pattern instructions**

20   **must specifically state the modification by underlining additions and bracketing deletions.**

21   Pursuant to Local Rule 163, jury instructions shall be filed with the Court **no later than**

22   **September 8, 2025.**

23       If the parties are unable to agree to a joint filing, the parties may submit separate filings.

24   ///

25       B.   Verdict Form

26       The parties must file a joint verdict form(s) concurrently with proposed jury instructions

27   **no later than September 8, 2025**.  If necessary, a special verdict or interrogatories shall be

28   included for all factual disputes submitted to the jury that must be resolved before questions of

1   law can be decided, and for any other issue on which specific responses are desired.  *See* Local

2   Rule 163(e).

3        If the parties are unable to agree to a joint filing, the parties may submit separate filings.

4        C.     <u>Voir Dire</u>

5        The parties shall submit proposed voir dire questions to the Court.  The Court reserves the

6   right to conduct all examination of prospective jurors.  Pursuant to Local Rule 162.1, the voir dire

7   questions shall be filed with the Court **no later than September 8, 2025**.

8        If the parties are unable to agree to a joint filing, the parties may submit separate filings.

9   **XXIV. AUDIO/VISUAL EQUIPMENT**

10       The parties are required to notify the Courtroom Deputy Clerk, Michele Krueger, **twenty-**

11  **one (21) days before trial**, if they wish to reserve and arrange for orientation with all parties on

12  the Court's mobile audio/visual equipment for presentation of evidence.  There will be one date

13  and time for such orientation.

14  **XXV.   OBJECTIONS TO PRETRIAL ORDER**

15       Each party is granted **fourteen (14) days** from the entry of this Final Pretrial Order to

16  object to any part of the order or to request augmentation to it.  A Final Pretrial Order will be

17  modified only upon a showing of manifest injustice.  If no objection or modifications are made,

18  this Order will become final without further order of the Court and shall control the subsequent

19  course of the action, pursuant to Rule 16(e) of the Federal Rules of Civil Procedure.

20       IT IS SO ORDERED.

21  **Date: June 16, 2025**

22

23

24  _____
    TROY L. NUNLEY

25  CHIEF UNITED STATES DISTRICT JUDGE

26

27

28

13